ACTION DEVELOPMENT CORPORATION v. HENRY D. WOODALL
AND WIFE, EVALYN M. WOODALL

No. 731SC784

(Filed 5 June 1974)

1. Vendor and Purchaser § 5— specific performance according to terms of contract

   A plaintiff cannot expect specific performance of a contract in a method different from that specified by the contract itself.

2. Vendor and Purchaser § 2— tender — actual offer to pay required

   An announcement, without more, of an intention to make a tender is not sufficient, nor is an assertion of readiness or willingness to pay; rather, in making a tender there must be an actual offer by the tenderer to pay.

3. Vendor and Purchaser §§ 2, 5— specific performance — failure to make tender — performance sought different from contract

   Plaintiff which failed to tender payment and demand delivery of a deed according to the terms of the contract was in no position to demand specific performance; furthermore, the performance plaintiff demanded was not in accordance with the terms of the contract, and the trial court therefore erred in failing to grant defendant's motion for summary judgment.

   Judge VAUGHN dissenting.

ON *certiorari* by petition of defendants to review the order of *Cohoon, Judge,* 10 August 1973 Session, Superior Court, CURRITUCK County.

This action was brought seeking specific performance of a contract for the sale of land. The contract was attached to the complaint and had been recorded in the office of the Register of Deeds of Currituck County. Plaintiff alleged it had complied with the contract and asked that the court order specific performance by the defendants. The contract of sale contained the following pertinent provisions: (1) That the sellers agree to sell and buyer agrees to buy certain land particularly described therein, (2) "The buyer and seller agree that the sale price shall be $500,000 payable upon the following terms: $5,000 upon the signing of this contract, $75,000 payable on or before the first day of March 1973; the balance remaining shall be paid at the rate of $25,000 a year on the first of March of each year, plus interest at the rate of 7% computed semiannually. It is agreed that the rate of interest upon the aforesaid $75,000 shall also be 7%. Upon the payment of the total of $80,000 as

herein provided, the sellers agree to execute and deliver to the buyer a good and sufficient general warranty deed free and clear from all encumbrances with the exception of current taxes, easements and restrictions of record, if any. The buyer agrees to execute and deliver to the seller a mortgage or deed of trust for the unpaid balance payable in accordance with the terms stated above. . . . (3) The buyer agrees that he intends to develop the land which he is buying from the seller as a family campground for the accommodations of travel trailers and recreational vehicles, boatels, cottages, marina, motels, and such facilities as may be determined desirable or necessary for the proper and efficient operation of said business. *The buyer and seller agree that from time to time as the buyer develops the aforesaid property the sellers will release from the aforesaid mortgage or deed of trust such amount of land that may be required by the buyer, provided however that the buyer pay to the seller a sum equal to $1,500 per acre for each tract of land released which amounts will be applied upon the buyer's obligation to the seller.*" (Emphasis supplied.)

The contract further provided that the buyer would furnish the sellers plans and specifications for improvements, would not do any construction which would unreasonably destroy the beauty or "ecology" of the area, and would abide by the rules and regulations of all governmental agencies. Sellers agreed that all equipment on the premises used in the operation of the campground would become the property of buyer.

"It is agreed by and between the buyer and seller that upon the signing of this agreement and upon the payment of the $5,000 aforesaid the buyer may enter upon the premises, make such survey, plans, and construction as he desires so long as the buyer furnishes the seller a copy of his development plans, reasonably satisfactory to the seller. The buyer shall have all the income derived from the property thereby."

Plaintiff alleged that in accordance with the terms of the contract, it took possession of the property and made substantial improvements, that it tendered the down payment to defendants, requested a conveyance of the property and "releases from the operation of the purchase money deed of trust as provided by the contract of sale."

Defendants answered the complaint admitting execution of the contract and that the copy attached to the complaint was

a copy of the contract as executed and denied the other allegations. As a further answer, they averred that plaintiff had failed to pay the $75,000 due 1 March 1973, despite defendants' request that it do so. Defendants further averred that on 28 March 1973, they tendered plaintiff a deed, but that plaintiff refused to pay the $75,000 which was due on 1 March 1973, and the defendants notified plaintiff, in writing, of their intention to rescind the contract because of plaintiff's breach. Defendants averred that they had fully complied with the contract, and specific performance would be inequitable because plaintiff had refused to pay the $75,000 due on 1 March 1973, in accordance with the terms of the contract and that, because of plaintiff's breach, it was not entitled to damages.

Defendants served interrogatories and requests for admission which were answered by plaintiff. Defendants moved for motion on the pleadings and for summary judgment. Both motions were denied. Both parties filed affidavits. The judgment filed recited that it appeared to the court "at said hearing from the pleadings, affidavits and arguments from both parties that defendants' motion should be denied." Whether the court considered the answers to interrogatories and requests for admission, we cannot say. Defendant petitioned this Court for a writ of certiorari to review order of the court denying the motion for summary judgment. We granted the petition. The matter was submitted without oral argument.

*Twiford, Abbott and Seawell, by O. C. Abbott and John C. Trimpi, for plaintiff appellee.*

*White, Hall, Mullen and Brumsey, by Gerald F. White and William Brumsey III, for defendant appellants.*

MORRIS, Judge.

Section V of plaintiff's complaint alleges the following:

"In accord with the provisions of the said contract of sale, plaintiff tendered to defendants the down payment and requested a conveyance of the property and releases from the operation of the purchase money deed of trust as provided by the contract of sale; that the defendants failed and refused to convey and release any property for the down payment."

It is apparent that plaintiff asks for specific performance by release of portions of the land before or at the time of the pay-

ment of the $75,000. The contract is certainly not ambiguous. It clearly states that $5,000 is to be paid upon the execution of the contract; that $75,000 plus interest at the rate of 7% is to be paid *on or before 1 March 1973,* that the balance of the purchase price is payable $25,000 annually with interest at the rate of 7% secured by a deed of trust; that upon the payment of the $80,000 sellers will give a deed and buyer will give a deed of trust to secure the balance of the purchase price.

In a subsequent section, the contract provides that from time to time as buyer develops the property, sellers will release from the operation of the deed of trust one acre of land for each $1,500 paid and that that payment will be applied to the obligation secured by the deed of trust.

It is obvious to us that no release of land could be made until the deed of trust became operative. The deed of trust could not have become operative until buyer tendered the $75,000 plus interest and received a conveyance of the land. After that had been accomplished, seller, in accordance with the contract, was obligated to release from the operation of the deed of trust one acre of land for each $1,500 paid by buyer, which payments would be applied to the buyer's obligation to sellers.

[1] It is inconceivable that plaintiff can expect specific performance of a contract in a different method than the contract itself specifies. This principle is specifically spelled out in *McLean v. Keith,* 236 N.C. 59, 71, 72 S.E. 2d 44 (1952), where Justice Johnson, speaking for a unanimous Court, said:

> "The remedy of specific performance is an equitable remedy of ancient origin. Its sole function is to compel a party to do precisely what he ought to have done without being coerced by the court. 49 Am. Jur., Specific Performance, Sec. 2, p. 6.

> Equity can only compel the performance of a contract in the precise terms agreed on. It cannot make a new or different contract for the parties simply because the one made by the parties is ineffectual. 49 Am. Jur., Specific Performance, Sec. 22, pp. 35 and 36. 'The remedy of specific performance is never applicable where there is no obligation to perform,' 58 C.J., p. 847, and specific performance does not lie until there has been a breach of contract. 58 C.J., p. 851."

[2]   Had plaintiff tendered $75,000 to defendants on 1 March 1973, and defendants had refused to convey the property and take a deed of trust securing the balance of the purchase price, defendants would have breached the contract, nothing else appearing, and plaintiff would be entitled to specific performance. However, the plaintiff's affidavits in opposition to the motion state only: "That on March 1, 1973, Action Development Corporation was ready, willing and able to pay the consideration as proposed in the contract upon the delivery of a general warranty deed free of encumbrances." Even if the court considered the answers to interrogatories, and there is no indication in the record that it did, the answer to the question of whether plaintiff paid the $75,000 due 1 March 1973 as called for in the contract was that the plaintiff "had the $75,000 plus 7% interest" to pay defendants and notified the attorney who prepared the contract by letter before 1 March 1973, that plaintiff was ready to settle the transaction. None of this constitutes tender. "In making a tender there must be an actual offer by the tenderer to pay. An announcement without more of an intention of making a tender is not sufficient; nor is an assertion of readiness or willingness to pay sufficient." 86 C.J.S., *Tender*, § 28.

[3]   In *Aiken v. Andrews*, 233 N.C. 303, 305, 63 S.E. 2d 645 (1951), Stacy, C.J., speaking of necessity of tender in a situation involving a contract of sale said:

> "Speaking of its purpose and effect in *Bateman v. Hopkins*, 157 N.C. 470, 73 S.E. 133, *Walker, J.*, with his usual thoroughness, analyzed the authorities and drew from them the following epitome: 'Where the stipulations are mutual and dependent—that is, where the deed is to be delivered upon the payment of the price—an actual tender and demand by one party is necessary to put the other in default, and to cut off *his* right to treat the contract as still subsisting.' "

Here obviously actual tender and demand was necessary before defendants could be in default and plaintiff in a position to demand specific performance, assuming the performance he demands is in accordance with the terms of the contract. Here, however, the performance plaintiff demands is not in accordance with the terms of the contract. Had plaintiff tendered the $75,000 plus interest, it would have been entitled only to receive a warranty deed and have defendant accept its deed of trust for the balance of the purchase price. Then, and only *after* the pay-

ment of the $75,000 plus interest, could plaintiff be entitled to release of property from the operation of the deed of trust upon the payment of additional sums of money in multiples of $1,500.

In our view of the case, the court should have granted defendants' motion for summary judgment.

Reversed.

Judge HEDRICK concurs.

Judge VAUGHN dissents.

Judge VAUGHN dissenting:

I agree with the majority's view of the meaning of the contract as it relates to the release of land from the operation of the deed of trust upon the payment of additional sums by plaintiff.

I do not agree that the judge erred when he declined to grant summary judgment in favor of defendant and thereby dismiss plaintiff's action to enforce the contract "according to the terms thereof," damages or other relief. We are not dealing with an option to purchase but with a contract of purchase and sale where, ordinarily, time is not of the essence. Moreover, plaintiff, according to the affidavits, went into possession under the contract of sale shortly after its execution on 25 September 1972 and has expended over $160,000.00 in development of the property. Plaintiff's failure to pay the additional $75,000.00 on 1 March 1973, whether prompted by a dispute over the terms of the contract, the existence of unsatisfied liens against the property or other reasons, did not, as a matter of law, constitute an abandonment of the contract and did not entitle defendants, on 28 March 1973, to "cancel" the contract without reasonable and formal notice to plaintiff that if plaintiff did not fulfill its obligations, defendants would not consider themselves bound.